THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA D. JANTOS,

               Plaintiff,

v.

THE PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA,

               Defendant.

Case No. 2:15-cv-01530-RAJ

ORDER

This matter comes before the Court on Plaintiff Laura D. Jantos' ("Plaintiff" or "Ms. Jantos") Motion for Summary Judgment and Defendant Prudential Life Insurance Company of America's ("Prudential" or "Defendant") Cross-Motion for Summary Judgment. Dkt. ## 62, 63, 67, 68. Both parties have opposed the other's Motion and filed a Reply in support of their own. Dkt. ## 72, 73, 74, 78, 79, 80.

For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion

ORDER-1

for Summary Judgment, and **REMANDS** this case to Defendant with instructions to reprocess Plaintiff's claim in accordance with this Order.

## I. BACKGROUND

Plaintiff worked at ECG Management Consultants, Inc. ("ECG") from 1995 to 2005, when she became a shareholder. AR79-80; AR345-60.[1] Plaintiff is a beneficiary to a Long Term Disability ("LTD") Plan that Defendant administers. AR1041. In April 2012, Plaintiff suffered a traumatizing brain injury in a snowboarding accident and became disabled. AR83-86. Plaintiff then submitted a claim for LTD benefits under the Plan. *Id.*

Plaintiff's Plan provided that it would pay sixty-percent of Plaintiff's "monthly earnings," up to $15,000. AR27; AR37-38. "Monthly earnings" was defined in the Plan as the participant's "gross monthly income from your Employer in effect just prior to your date of disability. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer." AR37-38. The Plan further informs participants that Defendant would "multiply your monthly earnings by 60%" and then compare that figure with the maximum benefit ($15,000). *Id.* The lesser of those two numbers is the gross disability payment, which may be reduced by certain other income the participant receives, including social security. *Id.*

During its initial review of Plaintiff's disability claim in October 2012, Defendant informed ECG that it was "completing our initial review of Ms. Jantos' claim . . . and needed to confirm her monthly earning[s]" and stated:

> Monthly earnings means her gross monthly income from the employer in effect just prior to her date of disability (April 3, 2012). It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than her Employer. Copy of pay stubs for the month of March 2012 should suffice

---

[1] Pages from the Administrative Record are cited as, e.g., "AR1," where the number in the citation refers to the final six-digit number of the page's Bates number with preceding zeroes excluded. *See* Dkt. # 82.

ORDER-2

the request. Can you also send in her timesheet beyond September 15, 2012 through present.

AR212-17. In response, ECG provided Plaintiff's February 29, 2012 and March 15, 2012 pay stubs. *Id.*

On October 11, 2012, Defendant approved Plaintiff's LTD claim. AR 964-66. Defendant then calculated Plaintiff's base salary at $190,000 per year, and took this amount, divided by 12, to be her "monthly earnings" for the purposes of assessing her LTD benefits under the plan. AR79; AR213-14. In the October 2012 approval letter, Defendant stated that Plaintiff's "*monthly earnings*" were $15,833.33 and that her "Scheduled Benefit (60.00% of salary)" was therefore $9,500. AR965.

On July 28, 2015, Defendant terminated Plaintiff's LTD benefits effective July 31, 2015 because it concluded she no longer met the Plan's definition of disability. AR1113-14. Plaintiff then filed this lawsuit on September 25, 2015 arguing (1) that Defendant had underpaid her monthly benefit; and (2) that Defendant had improperly stopped paying LTD benefits. Dkt. # 1, at ¶¶ 6-7. The Court stayed the case pending resolution of the ERISA claim process. Dkt. ## 13, 17.

In December 2015, Plaintiff appealed Defendant's termination of her LTD benefits. AR2419-24. Defendant reinstated her claim on March 10, 2016 effective August 1, 2015, and paid out based on the same monthly benefit amount it had previously paid. AR2448-49. The parties notified the Court, and the Court reopened this case on May 24, 2016. Dkt. # 18. Defendant then moved to dismiss Plaintiff's Complaint, arguing that (1) Plaintiff failed to exhaust her administrative remedies; and (2) Plaintiff did not provide sufficient detail in her Complaint regarding her "miscalculation" claim. Dkt. # 38. The Court granted Defendant's motion and dismissed Plaintiff's Complaint without prejudice. Dkt. # 44. Plaintiff then appealed Defendant's determination of her monthly benefit amount, alleging that Defendant undercalculated her "monthly earnings" under the plan. AR2419-424. As part of this

ORDER-3

appeal, Plaintiff submitted her W-2's from ECG for 2010-2012, which reflected total annual earnings of $690,462.51 in 2010, $716,595.18 in 2011, and $598.015.84 in 2012. AR2422-24.

Defendant denied the appeal by letter dated June 21, 2017, reasoning that it could not tell from the W-2's whether the income figure included excludable items, such as bonuses. AR 2453-57; Dkt. # 56. In deciding this appeal, Defendant contacted ECG on June 1, 2017. AR2491. Defendant contends that they informed ECG of the appeal and asked that ECG confirm the information in ECG's June 22, 2012 "Employer Statement" form provided by Defendant, which indicated that Plaintiff's "Normal Earnings Prior to this Absence (exclude bonus, overtime, etc.)" were $190,000.00 per year. AR 79; AR2491. According to Defendant's records, ECG's Chief Human Resources Officer responded on June 5, 2017, stating that "[b]elow is our final record of Ms. Jantos'[] annual base salary, which was $190,000. This figure excludes annual incentive pay, bonus, commission, profit sharing, etc." AR2492.

After receiving Defendant's decision, Plaintiff filed her Second Amended Complaint. Dkt. # 51. On July 20, 2018, Plaintiff filed her Motion for Summary Judgment. Dkt. ## 62, 63. Defendant responded with its Cross-Motion for Summary Judgment. Dkt. ## 67, 68. These Motions are now before the Court.

**II.   LEGAL STANDARD**

The first issue the Court must decide is whether to consider the parties' Motions under Federal Rule of Civil Procedure 52 or 56. Plaintiff filed her Motion as one arising under Rule 56; Defendant filed its Motion as one arising Rule 56 or "in the alternative" Rule 52. Dkt. ## 63, 68. Both parties appear to treat their respective motions as arising under Rule 56; neither provides any proposed factual findings or cites any standard from Rule 52 that would guide this Court's analysis. The only legal standard Defendant cites is the standard for summary judgment under Rule 56. Dkt. # 68 at 9-10.

Accordingly, as neither party appears to oppose treating this dispute as arising under Rule 56, the Court will construe both Motions as motions for summary judgment. Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

In this ERISA action, both parties agree the applicable standard of review is *de novo*. Dkt. # 63 at 14-15; Dkt. # 68 at 10. The Court accepts the parties' apparent agreement and reviews the record *de novo*. "When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). The administrator's "evaluation of the evidence is not accorded any presumption of correctness." *Perryman v. Provident Life Ins. & Acc. Ins. Co.*, 690 F. Supp. 2d 917, 942 (D. Ariz. 2010). In reviewing the administrative record and other admissible evidence, the Court "evaluates the persuasiveness of each party's case, which

necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014) (quoting *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010)).

When a district court "reviews a plan administrator's decision under the de novo standard of review, the burden is placed on the claimant." *Muniz*, 623 F.3d at 1294; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (claimant "bears the burden of proving his entitlement to contractual benefits"). However, this does not relieve the plan administrator from its duty to engage in a "meaningful dialogue" with the claimant about her claim. *See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat 29 C.F.R. § 2650.503-1(g) calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries . . . [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.").

## III. DISCUSSION

Plaintiff's primary claim arises under 29 U.S.C. § 1132(a)(1)(B). Dkt. # 51 at ¶¶ 29-31. She alleges that Defendant underpaid her LTD benefits, and she seeks to enforce her rights under the Plan as well as clarify her right to future benefits under the terms of the Plan. *Id.* Section 1132(a)(1)(B) provides that a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff also alleges that Defendant violated its obligations as an ERISA fiduciary "by failing to act in accordance with the documents and instruments governing the LTD Plan" when calculating Plaintiff's monthly benefit, in violation of 29 U.S.C. § 1132(a)(3). *Id.* at ¶¶ 32-39. Plaintiff alleges that Defendant breached its fiduciary duty by, *inter alia*, "failing to fully and fairly investigate the correct amount of Plaintiff's 'monthly

ORDER-6

earnings' in making its determination of the 'gross disability payment' and 'monthly payment' due Plaintiff." *Id.* at ¶ 36. In her Motion for Summary Judgment, Plaintiff requests that this Court order a recalculation of her "monthly earnings" to include sources of income besides her base salary, to order Defendant to provide Plaintiff a monthly payment of $15,000 (subject to Social Security offset) since July 2012, and to pay prejudgment interest. Dkt. # 63 at 26-27. Defendant's Cross-Motion requests that this Court find that Defendant has paid Plaintiff precisely the benefit she is sue under the Plan, and to therefore dismiss Plaintiff's claim with prejudice. Dkt. # 68 at 16.

Accordingly, the main issue in this case is whether Defendant properly investigated and calculated Plaintiff's "monthly earnings" under the Plan for purposes of paying out her LTD benefits. The Plan states that it will pay sixty-percent of Plaintiff's "monthly earnings," not to exceed $15,000. AR37-38. In this case, the Administrative Record consists primarily of evidence of only one type of "monthly earning": Plaintiff's salary. Defendant found that Plaintiff earned $15,833.33 per month, as this figure represents the monthly division of her $190,000 annual salary. AR965. Defendant agreed to pay Plaintiff sixty-percent of this amount, which equals approximately $9,500. *Id.* Thus, if Plaintiff's salary is truly the only type of income that qualifies as "monthly earnings" under the Plan's definition, then Defendant's calculations are correct and they would be entitled to summary judgment. Dkt. # 68.

It seems that from the outset of Plaintiff's claim, Defendant believed it only needed to determine Plaintiff's annual salary in order to calculate her "monthly earnings" under the Plan. *See, e.g.*, AR2419.[2] The Court does not believe the resolution of this case to be so simple. The Plan does not contain any language explicitly limiting "monthly earnings" to a participant's annual salary; instead, the Plan calculates "monthly earnings" as the participant's "gross monthly income" excluding "income received from

---

[2] It is perhaps for this reason that Defendant only requested pay stubs from ECG in 2012 and did not request any other information about Plaintiff's compensation structure. AR216-17. The Court notes that Plaintiff's pay stubs for two months may not, and in this case did not, reflect the total amount of Plaintiff's income.

ORDER-7

commissions, bonuses, overtime pay, [or] any other extra compensation." AR37-38. None of these more specific terms are defined anywhere else in the Plan documents provided to the Court. Under the doctrine of *contra proferentem*, the Court should interpret any ambiguities in favor of the non-drafting party. *See Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538-40 (9th Cir. 1990). *Contra proferentem,* which is recognized by federal common law and the law of every state, holds that "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Id.* Accordingly, to the extent ambiguities exist with respect to terms such as "gross monthly income" or "bonus," they are to be resolved in favor of Plaintiff, the non-drafting party.

Under this analytical framework, the Court finds that the evidence submitted by Plaintiff in her Affidavit (Dkt. # 67) indicates the existence of potential sources of income that should have been considered by Defendant in calculating Plaintiff's "monthly earnings." In her Motion, Plaintiff argues that Defendant undercalculated her monthly benefits by only including her base salary as "monthly earnings." Dkt. # 62 at 4. Plaintiff contends that her income from ECG consisted of (1) a base salary; (2) "ordinary business income" as a shareholder of ECG, a subchapter S corporation,[3] and (3) income through ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* In support of her argument, Plaintiff submits a number of documents that are not included in the Administrative Record, including (1) Schedule K-1's from 2010 to 2012 indicating "ordinary business income" Plaintiff received as a shareholder of ECG; and (2) documentation evidencing ▬

---

[3] Plaintiff notes that as a subchapter S corporation, ECG was treated as a pass-through entity, with all items of income generated by the company allocated personally to individual shareholders as reported annually by ECG on Form K-1 (via Form 1120S). Dkt. # 63 at 6. A Schedule K-1 is the form "used by an S corporation to report the shareholder's share of income, losses, deductions and credits." *Rubin v. United States*, 904 F.3d 1081, 1083 (9th Cir. 2018). Plaintiff continues that as a subchapter S corporation, ECG did not have its own tax liability because its income was divided among and passed through to its shareholders based on percentage of ownership. *Id.* Defendant does not dispute this characterization.

ORDER-8

██████████████████████████████████████; and (3) ██████████████████████████████████████. Dkt. # 67, Exs. 1-8. Plaintiff contends that these documents show additional income sources that would entitle her to the "maximum monthly benefit" of $15,000 per month. Dkt. # 63 at 21.

Defendant's counterarguments here, and elsewhere in its Response, rely mostly on dictionary definitions and analogies, glossing over the ambiguities and vagueness in the Plan's definition of "monthly earnings." Dkt. # 73 at 6-14. Defendant argues, for instance, that the Schedule K-1 income should be excluded as "bonus" or "extra compensation" income because it was dependent on ECG's profitability, and therefore not guaranteed or ascertainable until after Plaintiff became disabled. Dkt. # 73 at 10. The vague wording and definition of "monthly earnings" in the Plan do not support Defendant's limited construction. It is hard to see, based on the current record, how the Schedule K-1 income qualifies as a "bonus," especially where this term is not defined or limited in the Plan itself. Even though Defendants argues that a dictionary definition of "bonus" includes "something in addition to what is expected or strictly due," Defendant has not shown how this income is in "addition" of what would normally be given. Dkt. # 73 at 8. Instead, Plaintiff established that she had received this income as part of her normal compensation for years. Dkt. # 67, Exs. 1-3. The record also contains little indication as to how the Schedule K-1 payments are in any way discretionary, or not ascertainable. As Plaintiff notes, passthrough income on a Schedule K-1 reflects payouts typical of all S corporations and accumulates throughout the year, and had done so for the many years Plaintiff was a shareholder. Dkt. # 80 at 3. At best, the Court cannot categorically reject all of Plaintiff's Schedule K-1 income as a "bonus" or "extra compensation," as Defendant suggests. These terms are ambiguous as defined in the Plan, and ambiguities are to be resolved in favor of Plaintiff. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993).

ORDER-9

Defendant also admits that the Schedule K-1 and ▮▮▮▮▮ qualify as "income," but contends that it was not included in the earnings calculation because it was not paid out "monthly." Dkt. # 73 at 7, n.14 ("Prudential recognizes that Plaintiff's K-1 and ▮▮▮▮▮▮▮▮▮▮▮▮▮ payments constitute gross income to Plaintiff from ECG, as those terms are defined per their plain and ordinary meaning. But, as addressed above, this income was not paid monthly."). The Court agrees with Plaintiffs that this appears to be an overly reductive interpretation of "monthly" as used in the Plan. Under Defendant's literal interpretation, any income that is not paid strictly on a "monthly" basis would be excluded. Dkt. # 73 at 7. As Plaintiff argues, this would have the effect of potentially excluding Plaintiff's salary, which is paid biweekly, leaving Plaintiff with theoretically no "monthly earnings." Dkt. # 80 at 2. The Court cannot construe the terms of the Plan in such a fashion as to potentially deny Plaintiff any LTD benefits, especially where her eligibility is no longer in dispute. Moreover, this construction is seemingly contradicted by Defendant's own actions in allocating Plaintiff's monthly benefits by dividing her annual salary by twelve. AR212-16; 964-66. Defendant's interpretation also would apparently ignore the word "gross," which would seemingly provide for more than one source of income beyond a participant's salary. *Cf. Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 936 (9th Cir. 2012) (rejecting insurer's argument that "gross monthly income" included only income actually received prior to disability).

As a result, applying the doctrine of *contra proferentem,* the Court would interpret ambiguities in favor of the Plaintiff and conclude that Plaintiff's "monthly earnings" are not necessarily limited to her annual salary and could include, at least, the income reflected in her Schedule K-1's. The Court is in a more difficult position with Plaintiff's income through the ▮▮▮ at ECG. It is not clear from the current record whether the income Plaintiff received from the ▮▮▮ should have been included in the monthly earnings calculation. As mentioned above, "monthly earnings" under the Plan explicitly excludes "bonuses." AR37-38. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ORDER-10

[REDACTED]. Dkt. # 67, Ex. 4; *cf. Russell v. Prudential Ins. Co. of Am.*, 437 F.2d 602, 606 (5th Cir. 1971) (finding that portions of income that are "in the nature of a commission or incentive pay [do] not have that quality of unexpectedness implied by the word 'bonus'" and are thus properly included in benefits determination under ERISA plan). There simply is not enough evidence in the Administrative Record supporting either construction, primarily because the only evidence on this point was first submitted by Plaintiff is support of her Motion for Summary Judgment, and Defendant has not yet investigated or analyzed this evidence. Dkt. # 67. More development of the Administrative Record would be needed to determine how payments under these PIP's operated, and how these operations interact with the Plan's definitions.

This leaves the Court in a difficult position. On one hand, Plaintiff has submitted seemingly compelling evidence that Defendant miscalculated her "monthly earnings" by not including, at least, her shareholder income, and potentially her [REDACTED]. On the other hand, the Court is wary of the Ninth Circuit's warning about considering evidence that is not contained in the Administrative Record, and evidence that "could easily have been submitted to the administrator is disfavored." *Nicula v. First UNUM Life Ins. Co.*, 23 F. App'x 805, 808 (9th Cir. 2001); *see also Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999). Defendant persuasively argues that this evidence of additional income was likely in Plaintiff's possession throughout the appeal process, and should have been offered earlier for Defendant to consider and note in the Administrative Record. Dkt. # 72 at 14-17. Plaintiff's argument that she was prevented from doing so

ORDER-11

because of "confidentiality" agreements with ECG is unconvincing and largely unsupported by evidence in the record. Dkt. # 80 at 11.

However, the Court also notes that the Administrative Record is likely incomplete due to Defendant's lack of investigation into Plaintiff's earning situation. Although the insured carries the burden of showing she is entitled to benefits, ERISA administrators have a fiduciary duty to conduct an adequate investigation when considering a claim for benefits. *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1226 (D. Idaho 2013) (citing *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)); *see also Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009). "This requires that the plan administrator engage in 'meaningful dialogue' with the beneficiary. If the administrator 'believes more information is needed to make a reasoned decision, they must ask for it.'" *Cady*, 930 F. Supp. 2d at 1226 (quoting *Booton*, 110 F.3d at 1463).

The Court agrees with Plaintiff that Defendant's investigation into Plaintiff's compensation structure, as reflected in the Administrative Record, was likely inadequate. While the Administrative Record does not contain the compensation evidence Plaintiff now provides on summary judgment, it did contain indications that Plaintiff's "gross monthly income" was not limited to her yearly salary. For instance, Plaintiff's W-2's, submitted during the administrative appeal process, indicated that her income was much higher than $190,000. AR2419-24. Defendant argues that it is impossible to tell from these W-2's alone whether these amounts included bonuses or other compensation excludable from the "monthly earnings' calculation under the Plan. Dkt. # 68 at 14; AR 2453-2457, AR2486. This observation, while true, should have triggered additional inquiries into Plaintiff's compensation structure, not the cessation of Defendant's investigation. A plan administrator may not "shut [its] eyes to readily available information when the evidence in the record suggests that the information

might confirm the beneficiary's theory of entitlement." *Rodgers v. Metropolitan Life Ins. Co.*, 655 F. Supp. 2d 1081, 1087 (N.D. Cal. 2009) (citations omitted).

Moreover, both ECG and Plaintiff repeatedly informed Defendant that Plaintiff was a shareholder of ECG, which should have indicated to Defendant that Plaintiff may have income sources beyond those of a typical employee. AR79-80; AR358; AR1041. It is true that from 2012 to 2017, the only income reported by ECG was Plaintiff's $190,000 salary, and Plaintiff did not seem to contest the monthly benefits amount; accordingly, during that time period, it may have been reasonable for Defendant to believe there was only one income source. This situation changed when Plaintiff submitted her W-2 evidence in 2017. The W-2's, combined with other evidence in the record that indicated additional income, should have triggered a more thorough inquiry as to the sources of income that generated the W-2 numbers.[4] Instead, Defendant used the ambiguity as an excuse to avoid further investigation. Had Defendant conducted a more thorough investigation of Plaintiff's compensation structure, the relevant evidence (such as the Schedule K-1's and the PIP documentation) would likely be in the Administrative Record, and the Court would not be faced with the current dilemma.

Instead of making a determination on an incomplete record, the Court believes it to be more prudent to remand this matter to the plan administrator for a new factual determination of Plaintiff's "monthly earnings" based on the evidence now before the Court on summary judgment. Even on *de novo* review, this Court can remand a disability claim to the plan administrator if the record is not sufficiently developed. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (finding that "additional evidence is necessary to conduct an adequate de

---

[4] Although Defendant contends that ECG definitively confirmed Plaintiff's income was limited to her salary, the Administrative Record is not so clear. Dkt. # 73 at 8. Initially, Defendant's communications with ECG indicated that ECG only needed to provide one set of pay stubs, and the "Employer Statement" form did not solicit any additional information about Plaintiff's compensation structure. AR2421. In responding to Defendant's requests, ECG indicated that it believed that it only needed to provide information concerning Plaintiff's salary. AR2486; AR2491-92. Given the considerably more complicated circumstances of Plaintiff's actual compensation structure, these efforts do not bear the indications of an adequate investigative effort of Plaintiff's potential LTD benefits.

ORDER-13

novo review of the benefit decision" and "leav[ing] to the district court whether to remand to the plan administrator for an initial factual determination"); *Kowalski v. Farella Braun & Martell, LLP*, No. C-06-3341 MMC, 2008 WL 5397511, at *15 (N.D. Cal. Dec. 23, 2008) (finding, on de novo review, that there was "inadequate medical and vocational evidence in the record to support a finding on such an issue" and remanding the claim to the administrator for consideration.").

The Court finds that Defendant has not yet fully examined the compensation structure evidence it should have examined, and thus has not yet made the appropriate findings for this Court to review. The Court will **DENY** Defendant's Cross-Motion and **GRANT IN PART AND DENY IN PART** Plaintiff's Motion. The Court grants Plaintiff's Motion only to the extent it requests a reexamination and recalculation of her monthly benefits in accordance with this Order, but otherwise denies Plaintiff's Motion. The Court thus exercises its discretion to **REMAND** this matter to the Plan Administrator, Defendant, to reinvestigate and recalculate Plaintiff's "monthly earnings." In doing so, Defendant should reexamine and recalculate Plaintiff's LTD benefits considering the information attached to Plaintiff's Affidavit submitted in support of her Motion (Dkt. # 67), and conduct an appropriate investigation based on this evidence. Should Plaintiff conclude that Defendant's resulting findings are faulty, or a reasonable investigation was again not conducted, Plaintiff may appeal Defendant's determination.

### IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment, and **DENIES** Defendant's Cross-Motion for Summary Judgment. Dkt. ## 63, 68. The Court **REMANDS** this matter to

ORDER-14

Defendant to reexamine the calculation of Plaintiff's LTD benefits in accordance with this Order.

Dated this 21st day of March, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge